UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CIRITO CORDERO,

                        Petitioner,                    **REPORT AND**
                                                                            **RECOMMENDATION**

v.

                                                                             15-CV-00383(A)(M)

CHRISTOPHER MILLER,

                        Respondent.
_____

        This case was referred to me by the Honorable Richard J. Arcara for all proceedings necessary to determine the factual and legal issue presented and for preparation of a Report and Recommendation [9].[1]  Before me is petitioner Cirito Cordero's petition for habeas corpus relief pursuant to 28 U.S.C. §2254 [1].  For the following reasons, I recommend that the petition be denied.

## BACKGROUND

        Following a jury trial on July 22, 2011, petitioner was convicted of predatory sexual assault against a child (N.Y. Penal Law ¶130.96), in County Court, Erie County, New York, arising from a December 7, 2010 incident with his girlfriend's son. Petition [1], p.1.  He was sentenced to a term of twenty years to life in prison. Id.

        In December 2010, petitioner resided with his girlfriend, Juliana Diaz, and her two minor sons at 35 Concord Avenue, in Buffalo, New York (T410).[2] Ms. Diaz's shift as a bus aide began at 5:15 a.m.  (T413). On the morning of December 7, 2010, Ms. Diaz went to work,

---

[1]         Bracketed references are to the CM/ECF docket entries

[2]         References denoted as "T" refer to trial transcript.

leaving the victim and her other son in petitioner's care (T414-15). She observed nothing wrong with the victim on the night of December 6 or on the morning of December 7, 2010 (T416).

The victim, who was six years old, testified that on the morning of December 7, 2010, he had a green frog stuffed animal with him (T238). Petitioner entered his room and said that he could no longer sleep with stuffed animals (T237). He then left the room and returned with a fork (T238). The victim testified that petitioner inserted the fork into his anus while he was standing unclothed (T241, 253-55). The pain caused him to scream and cry (T241, 255). The victim observed feces on the fork, and recalled petitioner telling him to "eat it" (T254). Thereafter, petitioner threw out the fork, helped the victim get dressed for school, and drove both boys to the bus stop (T255).

The victim's nine-year-old brother testified that he heard a scream from the victim's room that morning, and next observed petitioner, who "seemed angry", exit the room and wash feces off of his hands in the kitchen sink (T194-95).

Pamela Mieth, a bus aide, testified that the victim was crying after boarding the bus that morning and vomited (T295-96). Upon arriving at school at approximately 7:25 a.m., Ms. Mieth accompanied the victim to the nurse's office (T298).

Ms. Diaz testified that later that morning she received a call from the school that the victim needed to be picked up (T416-17). From there she took the victim to the emergency room of Women and Children's Hospital at approximately 9:30 a.m. (T417-18). When she asked the victim if someone had hurt him, he provided a detailed response (T420).

Karen Kelly, a registered nurse, testified that Ms. Diaz was on the ground crying and very upset because of what the victim reported to her (T327-28). Ms. Kelly then relayed that

- 2 -

information to the attending physician (T328).³ Meanwhile, as the victim's vital signs worsened, he was prepared for surgery (T331).

Kathryn Bass, M.D., the pediatric surgeon who treated the victim, testified that she observed bruising around his anus and a laceration (T132-33). With a scope, she observed a hole in the bowel wall (T134). Dr. Bass opined that the victim's injuries could not have been more than six hours old, could not have been self-inflicted, and could be consistent with being caused by a fork (T134, 145-47).

Natalie Perez, a detective with the Buffalo Police Department, Sex Offense Unit, testified that upon speaking to Ms. Diaz and hospital staff, she determined that petitioner was a person of interest, but was unable to locate him (T475-76). Detective Perez and another detective searched the residence at 35 Concord Street, but were unable to locate the fork used in the alleged incident (T477). Petitioner turned himself in at police headquarters on December 9, 2010, and was placed under arrest (T529).

Petitioner testified that the victim had defecated on himself on the morning of December 7, 2010, and that he told the victim to clean himself (T583-84). When the victim refused, petitioner "got frustrated" and said, "Well, you might as well scrape it out with a fork" (T585, 602). Petitioner denied retrieving a fork, or making the victim do so (T601-02).

## ANALYSIS

Petitioner asserts the following five grounds in support of his petition for habeas corpus relief: (1) the evidence adduced at trial was insufficient to support the conviction; (2) the trial court improperly allowed the prosecutor to use leading questions during direct examination

---

³ Debbie Phillips, a Sexual Assault Nurse Examiner, who tended to the victim, was unavailable to testify at trial (T 543).

of the victim; (3) the trial court denied his request for a missing witness charge; (4) the cross-examination of him constituted prosecutorial misconduct; and (5) the statements made by the prosecutor during summation amounted to prosecutorial misconduct. Petition [1], Grounds One - Five.

**A.    Timeliness**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitation period on a state prisoner's application for a writ of habeas corpus. *See* 28 U.S.C. §2244(d)(1). The AEDPA one-year limitations period is an affirmative defense, not a jurisdictional bar, and it is therefore the respondent's burden to plead it. *See* Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000). Because respondent does not argue that the petition is untimely, I will address the merits of petitioner's claims.

**B.    Exhaustion**

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not been "fairly presented" to the state courts. Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996) (*citing* Picard v. Connor, 404 U.S. 270, 275 (1971)). A state prisoner seeking federal habeas corpus must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition. *See* Rose v. Lundy, 455 U.S. 509, 518 (1982). To meet this requirement, the petitioner must have raised the question in the state court and put the appellate court on notice that a federal constitutional claim was at issue. *See* Grady v. Le Fevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984).

Here, each of the claims in the petition were presented to the New York State Supreme Court, Appellate Division, Fourth Department, on direct appeal, and after considering each claim on its merits, that court found that none of the claims warranted reversal of petitioner's conviction. *See* People v. Cordero, 110 A.D.3d 1468, 1470 (4th Dep't. 2013), lv. denied, 22 N.Y.3d 1137 (2014). Since petitioner's claims are exhausted, I will now evaluate the merits of each claim.

**C.     Standard of Review**

State court findings of "historical facts" and inferences drawn therefrom are presumed correct. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). Relief may not be granted with respect to any claim adjudicated on the merits in state court unless that state court's adjudication of the claim:

> "(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court decision is contrary to clearly established federal law when "it arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts". Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A routine state court

application of clearly established federal law is unlikely to be considered "contrary" under the AEDPA. Id., 406.

### D.  Insufficient Evidence

Petitioner argues that there was legally insufficient evidence to support his conviction for predatory sexual assault against a child. Petition [1], Ground One.  "[I]t is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial". Parker v. Matthews, 567 U.S. 37, 132 S. Ct. 2148, 2152 (2012). "The evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." Id.   However, "[t]he deference to the jury's verdict required by these standards does not mean . . . that we must never deem evidence insufficient. Nor does it mean that if there is *any* evidence arguably in support of a verdict, we must affirm." United States v. Clark, 740 F.3d 808, 811 (2d Cir. 2014) (emphasis in original).

In determining a sufficiency claim, the court must look to state law as to the elements of an underlying charge. *See* Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). In New York, "[a] person is guilty of predatory sexual assault against a child when, being eighteen years old or more, he or she commits the crime of . . . aggravated sexual abuse in the first degree. . .  and the victim is less than thirteen years old." N.Y. Penal Law §130.96.  To be guilty of aggravated sexual abuse in the first degree, a person must "insert[ ] a foreign object in

the . . . anus of another person causing physical injury to such person . . . [w]hen the other person is less than eleven years old". N.Y. Penal Law §130.70(1)(c). [4]

Petitioner argues that the evidence was legally insufficient to support his conviction because "there was no corroborative evidence that [he] caused the injuries which injured the victim". Petitioner's Reply Brief [17], pp. 4-5. The Appellate Division rejected similar arguments to those currently raised by petitioner: "We reject [his]contention that the evidence is legally insufficient to support the conviction because the sworn trial testimony of the six-year-old victim was not corroborated. Following a competency hearing, County Court determined that the victim understood the nature of an oath and thereafter permitted him to give sworn testimony. Thus, there was no requirement that the victim's testimony be corroborated . . . . We reject defendant's further contention that the evidence is legally insufficient because the pediatric trauma surgeon who repaired the victim's bowel did not testify that the instrument used to penetrate the victim's anus and rectum was a fork. The victim testified that defendant used a fork to penetrate him, and the surgeon testified that the instrument used was at least 6 centimeters long and had a sharp edge. We conclude that such testimony constitutes legally sufficient evidence to support the conviction". Cordero, 110 A.D.3d at 1469.

Viewing the evidence in the light most favorable to the prosecution, there was ample evidence that petitioner was guilty of predatory sexual assault against a child. At trial, the victim testified that petitioner had inserted a fork into his anus. That testimony was confirmed by Dr. Bass, who opined that the victim's injuries were consistent with a fork and not-self-inflicted (T145-47), and his brother, who observed petitioner washing feces off of his hands (T194-95). It

---

[4] It is undisputed that petitioner was over the age of 18 at the time of the incident, and that the victim was under the age of 11.

also contradicted petitioner's testimony that the injury could have been self-inflicted (T585, 602). Therefore, I recommend that this portion of the petition be denied.

### E. Leading Questions

Petitioner argues that the prosecution's use of leading questions in the direct examination of the victim was improper. Petition [1], Ground Two. During the course of the victim's direct examination, petitioner's counsel made four objections that questions were leading. Two of these objections were sustained (T237, 241). Thereafter, outside the presence of the jury, the trial court heard argument from the parties concerning the propriety of asking the victim leading questions on direct examination, and concluded that it was "appropriate to allow leading questions", noting that the prosecutor had "not been asking rhetorical questions such as isn't it true" (T242-46). Following that ruling, the victim's direct examination continued without any further objections that the questioning was leading (T254-57). The Appellate Division concluded that the court "did not abuse its discretion in permitting the prosecutor to use leading questions on direct examination of the child victim, particularly in view of the 'intimate and embarrassing nature of the crime'". Cordero, 110 A.D.3d at 1470.

"[A] petitioner seeking habeas relief based upon an error of state evidentiary law must . . . allege that the state evidentiary error violated an identifiable federal constitutional right, which necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system. The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." Jacobs v. West, 2009 WL 2378673, *11 (W.D.N.Y. 2009). Although leading questions are generally not permissible on direct

examination, New York state courts permit "'leading questions . . . of a child victim in a sexual abuse case so that the child's testimony can be clarified or expedited if the child is apparently unwilling to testify freely.'" Humphrey v. Fisher, 2010 WL 7417094, *14 (N.D.N.Y. 2010), adopted, 2011 WL 4055407 (N.D.N.Y. 2011) (*quoting* People v. Cuttler, 270 A.D.2d 654 (3d Dep't. 2000)). The limited latitude the court gave to the prosecution in the use of leading questions under the circumstances of this case did not run afoul of this exception, nor was it so fundamentally unfair as to deny petitioner due process. *See* Jacobs, 2009 WL 2378673, *11 ("the trial court's 'ruling permitting the prosecution to ask leading questions is a matter of state evidentiary law [and] the validity of such a ruling is reviewable in a federal habeas corpus proceeding only insofar as it resulted in a trial so fundamentally unfair as to deny [the defendant] due process.'" Id. (*quoting* Wallace v. Lockhart, 701 F.2d 719, 725 (8th Cir.1983)). Therefore, I recommend that this portion of the petition be denied.

### F.    Missing Witness

Petitioner argues that the trial court's denial of his motion to provide a missing-witness charge for Nurse Phillips was improper. Petition [1], Ground Three. In rejecting this argument, the Appellate Division concluded that the request for a missing witness charge was properly denied "because 'any testimony that [she] might have been expected to give was already before the jury through medical records and other expert testimony'". Cordero, 110 A.D.3d at 1470.

"Whether a missing witness charge should be given lies in the sound discretion of the trial court." Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir.1992). Petitioner offers no argument as to why the trial court abused that discretion. In any event, a "missing witness

charge claim cannot form a basis for habeas relief because [petitioner] can point to no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness". Kirkby v. Filion, 644 F. Supp. 2d 299, 307 (W.D.N.Y. 2009). Since petitioner's "missing witness charge claim raises only an issue of state law that cannot justify federal habeas relief" Kirkby, 644 F. Supp. 2d at 307, I recommend that this portion of the petition be denied.

### G.     Prosecutorial Misconduct: Cross-Examination

The petition alleges that petitioner was subjected to prosecutorial misconduct on cross-examination. Petition [1], Ground Four. In support of that allegation, petitioner points to the following three lines of questioning: 1) the invocation of his Sixth Amendment rights at the time of his arrest; 2) the accusation that he committed insurance fraud; and 3) the use of the plea transcript from his youthful offender adjudication. Id., Ground Four.

A petitioner asserting a prosecutorial misconduct claim must demonstrate that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Parker, 132 S. Ct. at 2153. To determine whether the alleged misconduct requires relief, three factors must be considered: "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct". United States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995). I will address each of petitioner's arguments individually.

### 1.  Invocation of his Sixth Amendment Rights

Petitioner argues that the trial court's decision to permit the prosecution to question him on cross-examination concerning his invocation of the right to counsel was an unreasonable application of clearly established Supreme Court precedent. Petition [1], Ground Four; petitioner's Reply Brief [17], Point II. At trial, petitioner testified that he was not hiding from authorities following the incident, but rather was staying at a friend's house after Ms. Diaz requested that he not return home because of what she learned from the victim (T595). He testified that once he was informed by his father that he was wanted for questioning, he went to the police station expecting to be questioned, but was arrested before any questioning occurred (T595-96).

On cross-examination, petitioner was asked, over the objection of his counsel, whether or not his lawyer had instructed the police officers not to talk to him (T602-04). Petitioner testified that he did not know whether his attorney had called the Buffalo City Police (T604). Outside the presence of the jury, Detective Jacqueline Sullivan testified that petitioner's attorney informed her by telephone that petitioner was going to turn himself in and instructed her not to speak to him (T691). Following Detective Sullivan's testimony, the jury was informed that the parties had stipulated that petitioner could not legally have been questioned on December 9, 2010, because his attorney had advised the police that petitioner was invoking his Sixth Amendment rights (T701-02, 717-18).

The Appellate Division concluded that the trial court did not err by permitting the prosecutor to cross-examine him concerning his invocation of his Sixth Amendment rights, since he "opened the door to that line of questioning during his testimony on direct examination by creating the misleading impression that he had been arrested without the opportunity to tell his

side of the story". Cordero, 110 A.D.3d at 1470 (*citing* Leecan v. Lopes, 893 F.2d 1434, 1442 (1990)).

"[I]t is generally impermissible for the prosecution to comment on the accused's invocation of his right to remain silent in an effort to impeach the accused's exculpatory testimony at trial." United States v. Logan, 242 F.3d 368 (2d Cir. 2000) (*citing* Doyle v. Ohio, 426 U.S. 610, 619 (1976)).  However, when "the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest" prosecutorial inquiry is permissible.  Doyle, 426 U.S. at 620 n. 11. "Thus, while comment on a defendant's silence is usually improper, such comment may be permissible when the defendant, by the impression he has sought to create, has opened the door." United States v. Logan, 242 F.3d 368 (2d Cir. 2000).

That is what occurred here. Petitioner's testimony opened the door by leaving the impression that he had been arrested without the opportunity to tell his side of the story.  The prosecutor's questioning on cross-examination was only introduced to clarify why he was not questioned by authorities. Moreover, as respondent notes, "[p]etitioner cannot be said to have been denied a fair trial by a question where he later stipulated to the answer".  Respondent's Memorandum of Law [6], p. 17.

### 2. Youthful Offender Adjudication

Petitioner argues that the prosecutor's use of his youthful offender adjudication on cross-examination amounted to prosecutorial misconduct. Petition [1], Ground Four.  Prior to trial, the court ruled that petitioner could be questioned about the "factual portion" underlying his youthful offender adjudication, but that "reference [to] a conviction or guilty plea or the youthful

offender finding" was "clearly off limits" (T11).  Consistent with that ruling, petitioner was asked on cross-examination as to whether he remembered breaking into the Freezer Queen plant on October 11, 2007, and when he could not recall, the prosecutor attempted to refresh his recollection by using the plea transcript from his youthful offender adjudication (T613-17). When the transcript failed to refresh his recollection, that line of questioning ceased (T618-21). The Appellate Division concluded that "the court did not err in permitting the prosecutor to cross-examine [petitioner] concerning the circumstances underlying his youthful offender adjudication".  Cordero, 110 AD.3d at 1470.

"Under New York law . . . use of a youthful offender adjudication for the purpose of impeachment is prohibited since the adjudication is not deemed a conviction. . . . The cross-examiner may, however, bring out the facts underlying the adjudication so long as he does not elicit the adjudication itself".  United States v. Canniff, 521 F.2d 565, 568–69 (2d Cir. 1975). Since the prosecutor did not discuss petitioner's youthful offender adjudication, but rather the underlying facts of that adjudication, the trial court's ruling was an appropriate exercise of discretion under New York law.  In the absence of any violation of state law, it "certainly [is] not . . . a constitutional error warranting habeas relief".  Ayala v. Ercole, 2007 WL 1135560, *14 (E.D.N.Y. 2007).

### 3.  Insurance Fraud

During cross-examination petitioner was asked, over his counsel's objection, if his car was registered to his father to save on insurance (T605).  When petitioner answered affirmatively, he was asked whether that constituted defrauding the insurance company (T605-

07).  The Appellate Division concluded that the trial court did not abuse its discretion in permitting this cross-examination. Cordero, 110 A.D. 3d at 1470.

"Under [People v. Sandoval, 34 N.Y.2d 371, 376–377 (1974)] and other state court rulings, acts of individual dishonesty, such as offenses involving theft, have a material relevance to a defendant's credibility on the witness stand." Walker v. Speckard, 806 F. Supp. 420, 424 (W.D.N.Y. 1992). See Sandoval, 34 N.Y.2d at 377 ("[c]ommission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness (*e.g.*, offenses involving theft or fraud, bribery, or acts of deceit, cheating, breach of trust) will usually have a very material relevance, whenever committed"). "A claim based on an alleged Sandoval violation deals with an evidentiary question and presents an issue for habeas relief only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right." Mastin v. Senkowski, 297 F. Supp. 2d 558, 593 (W.D.N.Y. 2003).  However, petitioner makes no attempt to demonstrate why the questioning, which bore upon his dishonesty, should have been precluded.  Therefore, he fails to establish an error, much less an error that constitutes a deprivation of a constitutionally recognized right.  See Thompson v. Yelich, 2011 WL 9523319, *5 (E.D.N.Y. 2011), adopted, 2012 WL 5904359 (E.D.N.Y. 2012) ("[p]etitioner's Sandoval claim does not establish an error, no less an error of a constitutional magnitude. Accordingly, petitioner fails to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established Federal law and the claim should be denied").

Ultimately, even if petitioner could demonstrate that it was an error of state law to allow any or all of these lines of questioning during petitioner's cross-examination, they do not rise to the level of a constitutional violation (individually or collectively), since they did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process".

Darden v. Wainwright, 477 U.S. 168, 181 (1986). Given the strength of the evidence against petitioner, which included the victim's testimony and corroborating testimony of Dr. Bass and his brother, there is no reasonable probability that the result of the trial would have been different if these lines of questioning were precluded, and thus petitioner cannot demonstrate that he was substantially prejudiced by these lines of questioning. *See* Quinney v. Conway, 784 F. Supp. 2d 247, 257 (W.D.N.Y. 2011). Therefore, this portion of the petition is denied.

### H.     Prosecutorial Misconduct:  Summation

Petitioner argues that the cumulative effect of the prosecutor's statements during summation amounted to prosecutorial misconduct. Petition [1], Ground Five. Specifically, petitioner points to the prosecutor's statements that "the law recognizes that children make the best victims" (T766), and that "I bet you could almost visualize his little green frog . . . I'll bet you'll never, never forget when he stood up with . . . all the might of a 45-pound small boy" (T776). Petitioner's Reply Brief [17], p. 10. The Appellate Division concluded that "[t]o the extent that the prosecutor during summation referred to the victim's stuffed animal, i.e., a 'little green frog,' and commented that the victim stood up to testify with all the 'might of a 45[-]pound boy' and that 'the law recognizes that children make the best victims' . . . such conduct, although improper, was not so egregious as to deprive defendant of a fair trial". Cordero, 110 A.D.3d at 1470.

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11 (1985). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned". Darden, 477 U.S. at 181. Instead, "[t]he

relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. As discussed above, in making that determination, three factors must be considered: "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct". Melendez, 57 F.3d at 241.

"Clearly established Supreme Court precedent teaches that criminal convictions are not to be lightly overturned solely on the basis of a prosecutor's inappropriate remarks in an otherwise fair proceeding." Atchison v. Artus, 2015 WL 2236430, *5 (W.D.N.Y. 2015). As the Appellate Division characterized it, while improper, the prosecutor's statements were "not so egregious as to deprive defendant of a fair trial". Cordero, 110 A.D.3d at 1470. "This is not a case where the prosecutor engaged in a pervasive pattern of misconduct". Atchison, 2015 WL 2236430, *5.

Importantly, any prejudice was minimized by the trial court's instruction to the jury - an instruction they are presumed to have followed - that what was said by the attorneys during their summations was not evidence, and that they could only consider the evidence (T719). See Francis v. Franklin, 471 U.S. 307, 324 (1985) ("we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions"); Atchison, 2015 WL 2236430, *5. Coupled with that instruction, as discussed above, the evidence against petitioner was strong. Under these circumstances, I conclude that the prosecutor's statements did not typify the "sort of egregious misconduct", amounting to a denial of constitutional due process. Donnelly v. DeChristoforo, 416 U.S. 637, 647–48 (1974). Therefore, I recommend that this portion of the petition be denied.

**CONCLUSION**

For these reasons, I recommend that the petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I also recommend that a Certificate of Appealability not be issued. *See* 28 U.S.C. §2253(c)(2).

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by May 22, 2017. Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 4, 2017

<u>/s/ Jeremiah J. McCarthy</u>  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge