UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CIRITO CORDERO,

                    Petitioner,       **DECISION AND ORDER**
                                         **No. 1:15-cv-00383(JJM)(MAT)**

    -vs-

CHRISTOPHER MILLER,

                    Respondent.
_____

## I.  Introduction

This matter comes before the Court following United States Magistrate Judge Jeremiah J. McCarthy's filing of a Report and Recommendation (Docket No. 19) on May 4, 2017. *See* 28 U.S.C. § 636(b)(1)(B); Western District of New York Local Rule 72(b), (c). In his Report and Recommendation ("R&R"), Judge McCarthy recommended that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by *pro se* petitioner Cirito Cordero be denied, and that no certificate of appealability should issue.

The parties were given until May 22, 2017, to file objections to the R&R. Cordero sought repeated extension of time to file objections (Docket Nos. 20, 22, 24, & 26), all of which were granted. On December 18, 2017, Cordero filed an Affidavit in Support of a Stay and Abeyance and a Motion to Appoint Counsel (Docket No. 28). About two months later, Cordero a Motion for an Extension of Time to File a Supplemental Stay and Abeyance (Docket No. 29).

On April 2, 2018, the matter was transferred to the undersigned. On April 9, 2018, Cordero filed a Motion to Appoint Counsel and a Motion for an Extension of Time to File (Docket No. 33). On April 16, 2018, the Court entered a text order (Docket No. 34) granting Cordero an extension of time until May 31, 2018, to file a Supplemental Application for a Stay and Abeyance and Other Related Relief, and denying the Motion to Appoint Counsel without prejudice.

To date, Cordero has not filed a Supplemental Application for a Stay and Abeyance and Other Related Relief. Respondent has filed no objections to the R&R, and has not filed any papers in response to Cordero's Application for a Stay and Abeyance.

For the reasons discussed below, the Court adopts the R&R in its entirety, and denies Petitioner's Application for a Stay and Abeyance, as well as his Motion to Appoint Counsel, and requests to expand the record and complete discovery.

## II.  The Application for a Stay and Abeyance

### A.   Overview

Petitioner has requested a stay in order to allow him to complete "several applications" in State court raising issues that allegedly relate back to his original habeas corpus petition. The "applications" include a proceeding pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 to obtain copies of the victims' medical records, a motion for a writ of error *coram*

*nobis* claiming ineffective assistance of appellate counsel, and a request for assignment of counsel in connection with a motion to vacate based on ineffective assistance of trial counsel. (Docket No. 29 at 1). He asserts that a stay also is "needed in order for him to raise to the appropriate objections" to the R&R. (*Id.*).

## B.    Legal Principles

When confronted with a 28 U.S.C. § 2254 habeas petition that presents some claims that have not been properly exhausted in state court, i.e., a "mixed petition," district courts may grant a stay "only in limited circumstances." *Rhines v. Weber,* 544 U.S. 269, 277 (2005) (noting that staying a federal habeas petition "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition"). Accordingly, the Supreme Court stated in *Rhines* that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State")).

## C. Application

Here, Cordero's petition was not a "mixed petition." Indeed, Judge McCarthy specifically found that all of Cordero's claims were fully exhausted and had been adjudicated on the merits. (Docket No. 19 at 5). Thus, Cordero must also be implicitly seeking permission to amend his petition to add new, unexhausted, and untimely claims. Courts in this Circuit "have disagreed over whether petitioners seeking to exhaust new claims may seek a stay under *Rhines*." *Martinez v. Mariuscello,* No. 16-CV-7933(RJS), 2017 WL 2735576, at *2 (S.D.N.Y. June 23, 2017) (citing *McNeil v. Capra,* No. 13-cv-3048(RA)(RLE), 2015 WL 4719697, at *6 (S.D.N.Y. Aug. 7, 2015)). For the purpose of resolving Cordero's pending application, the Court assumes without deciding that habeas petitioners may seek a stay pursuant to *Rhines* in order to exhaust new claims, not raised in the original petition. *Id.*

Turning first to the "good cause" requirement, Petitioner asserts that (1) his recent discovery of his trial attorney's disbarment, (2) the difficulties of conducting *pro se* litigation as a layperson and while incarcerated, (3) the refusal of New York State to provide him with copies of the victim's medical records that were submitted to the jury, and (4) his need to complete exhaustion proceedings for various State court applications

establish "good cause" so as to satisfy *Rhines*. (Docket No. at 19, ¶ 45; *see also id.* at 19-38). As discussed below, none of these factors, considered singly or in tandem, constitute "good cause."

Neither the Supreme Court nor the Second Circuit has articulated a standard for determining what constitutes "good cause" in the context of applications to stay habeas petitions. In *Rhines*, however, the Supreme Court expressly linked "good cause" to a petitioner's "*failure to exhaust*." 544 U.S. at 277 (emphasis added); *see also id.* ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was *good cause* for the petitioner's *failure to exhaust* his claims first in state court.") (emphases supplied). This comports with the *Rhines* court's emphasis on limiting the availability of stays in order to avoid frustrating AEDPA's dual purposes of promoting finality and encouraging petitioners to seek relief from state courts. *Id.* at 276–77; *see also Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) ("We must interpret whether a petitioner has 'good cause' for a failure to exhaust in light of the Supreme Court's instruction in *Rhines* that the district court should only stay mixed petitions in "limited circumstances.'") (citation omitted)).

That said, courts in this Circuit and elsewhere have taken differing approaches to defining good cause. Some courts analogize

"good cause" to the "cause" required to permits review of procedurally defaulted claims, stating that "good cause" "must arise from an objective factor external to the petitioner which cannot fairly be attributed to him or her." *Ramdeo v. Phillips*, No. 04-CV-1157(SLT), 2006 WL 297462 at *5-6 (E.D.N.Y. Feb. 8, 2006) (quotation marks omitted); *see also Nieves v. Conway*, No. 09-CV-3710(SLT)(LB), 2011 WL 2837428, at *2-3 (E.D.N.Y. July 14, 2011) (collecting cases). Other courts have relied on the Supreme Court's "reasonable confusion" language in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005),[1] decided less than a month after *Rhines*, suggesting that "good cause" not need be based on something external to the petitioner and that a more flexible inquiry is permitted. *See*, *e.g., Whitley v. Ercole,* 509 F. Supp.2d 410, 417-419 (S.D.N.Y. 2007) & *id*. at 420 (finding that State appellate court's alternative holdings by which "[a] trained lawyer easily could be confused" could have caused petitioner to believe his claims had already been addressed on the merits)). The Court need not choose between these two standards, as Cordero has not met

---

[1]

The *Pace* court stated in *dicta* that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." 544 U.S. at 416. *Pace* did not involve a stay-and-abeyance or whether the petitioner had "good cause" for his failure to exhaust. Rather, the *Pace* court's reference to "good cause" occurred in its rebuttal of the argument that a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that the applications were never "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). The Supreme Court noted that a petitioner "might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace*, 544 U.S. at 416.

either. As discussed below, Cordero has not demonstrated any external factors or "reasonable confusion" responsible for his failure to exhaust his claims.

The Court turns first to Cordero's discovery that his defense attorney ("Trial Counsel") was disbarred in March of 2017. Cordero notes that Trial Counsel's objectionable conduct occurred during 2009 to 2012, affected his "entire client base" of which Cordero is a "*de facto* member." (Docket No. at 20, ¶ 48). According to Cordero, this "created a set of facts supporting a constitutional claim" of ineffective assistance of trial counsel. (*Id.*). The Court finds that these allegations actually pertain to Cordero's argument urging a later start-date for the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(D);[2] they are not directly relevant to evaluating good cause for the failure to exhaust.

In any event, Cordero's discovery of Trial Counsel's disbarment did not "create[] a set of facts" supporting a colorable claim that Trial Counsel's performance years earlier was constitutionally deficient. Cordero asserts that "consistent with" the "conduct uncovered" in the course of the disbarment proceedings, Trial Counsel "told [him] to lie" on the stand at trial, "script[ed] [his] responses" to cross-examination, failed to

---

[2]
    "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court" and "shall run from the latest of" several events, one of which is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

consult a private investigator, failed to obtain an independent medical expert, "misrepresented facts to [Cordero's] father," and was reprimanded by the trial judge for his "propensity for fabrication and disregard for courtroom. . . ." (*Id.* at 20-21, ¶¶ 49-50). Cordero clearly cannot avail himself of 28 U.S.C. § 2244(d)(1)(D) because he had personal knowledge of all of Trial Counsel's alleged errors and misdeeds at the time of trial. "The 'newly discovered evidence' AEDPA limitations period 'runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'" *Williams v. Phillips*, No. 04 CIV.4653 DAB AJP, 2005 WL 1806161, at *9 (S.D.N.Y. Aug. 2, 2005) (quoting *Youngblood v. Greiner*, 97 Civ. 3289, 1998 WL 720681 at *4 n. 4 (S.D.N.Y. Oct. 13, 1998); citations omitted). Cordero cannot plausibly claim to have "good cause" for failing to exhaust his claims of ineffective of trial counsel sooner, where all of the facts necessary to raise such claims were in his possession at the time of his trial. *See Hector v. Greiner*, No. 99 CV 7863, 2000 WL 1240010 at *1 (E.D.N.Y. Aug. 29, 2000) ("[N]ewly discovered evidence is, by definition, incapable of discovery through . . . due diligence before or during trial. Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered."). "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, . . . while a

habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson,* 154 F.3d 196, 198-99 (5th Cir. 1998); *see also Tineo v. Strack*, No. CV 98-834, 1998 WL 938950, at *3 (E.D.N.Y. Nov. 12, 1998) (petitioner's "newly discovered evidence" period began to run at trial when petitioner first knew that the "the videotape was not . . . accurately transcribed," not when he had the videotape re-transcribed eight years after his conviction).

Cordero's second example of "good cause"—his status as a prisoner who is unschooled in the law—does not suffice. Given that "most habeas petitions are brought *pro se*, if an 'inadvertent failure' based on 'ignorance of the law' were enough to demonstrate reasonable confusion, the *Rhines* cause requirement would cease to exist." *McCrae v. Artus,* No. 10-CV-2988 RRM, 2012 WL 3800840, at *10 (E.D.N.Y. Sept. 2, 2012) (citing *Ramdeo v. Phillips,* No. 04-CV-1157(SLT), 2006 WL 297462 at *7 (E.D.N.Y. Feb. 8, 2006) (finding that "an inadvertent, good faith omission standard would drive an enormous hole through *Rhines* and [ ] AEDPA") (quotation marks omitted in original)); *Garcia v. Laclair*, No. 06-CV-10196(SES)(DF), 2008 WL 801278, at *4 (S.D.N.Y. Mar. 24, 2008) ("A lack of knowledge of legal procedures, in itself, is insufficient to find 'good cause.'")).

The third reason cited by Cordero—his difficulty in obtaining certain records from the State—arguably is "an objective factor

external to the petitioner which cannot fairly be attributed to him. . . ." *Ramdeo*, 2006 WL 297462 at \*5-6 (quotation marks omitted). However, the Court finds that it does not constitute "good cause" under the circumstances of this case. Cordero noted in his December 2017 stay application that he was waiting for the Erie County Court to rule on whether the Erie County District Attorney must release the victim's medical records to him. (Docket No. at 23, ¶ 57). Cordero avers that he needs these records in order to have them  examined by an expert. (*Id.*). Cordero claims that he "discovered," at an unspecified time, that the jury made a request to view the victim's medical records, which was granted. (*Id.* at 7). Again, Cordero has not explained why, apart from the fact that he is *pro se* and unschooled in the law, he was unable to begin the process of obtaining the medical records sooner than March of 2017. (*Id.* at 7-8). Cordero was present in the courtroom at the time the jury's note (Court Exhibit 4) was read by the trial judge. (Trial Transcript ("Tr.") at 832). Cordero also was present for the colloquy among the prosecutor, the trial judge, and Trial Counsel, about which trial exhibits should be provided to the jury. (*Id.* at 832-35).[3] Cordero claims that it was not until he began attending a "pseudo 'prison law school'" that he was able to discover the

_____

[3]

The Court notes that Trial Counsel successfully objected to the prosecutor's attempt to include the attending physician's annotated diagram of the victim's injuries, arguing that it was beyond the scope of the jury's request. (Tr. at 833).

facts about the jury's note and Trial Counsel's disbarment. However, "[t]he Court has found no cases supporting the proposition that a petitioner's ignorance of the law constitutes 'good cause' for the failure to exhaust." *Craft v. Kirkpatrick*, No. 10-CV-6049 MAT, 2011 WL 2622402, at *10 (W.D.N.Y. July 5, 2011) (finding "good cause" not shown where petitioner stated that "he was just recently informed by his inmate legal assistant that he was prejudiced by counsels' performance").

Turning finally to Cordero's fourth proffered reason, the Court finds that his asserted need to *complete* exhaustion proceedings cannot establish "good cause" for his "failure to exhaust his claims *first* in state court[,]" *Rhines*, 544 U.S. at 277, where, as here, he has not shown "good cause" for failing to institute these exhaustion proceedings earlier.

In sum, because Cordero cannot demonstrate "good cause," the Court finds that it would be an abuse of discretion to grant a stay in this case. *See Craft*, 2011 WL 2622402, at *10 ("A lack of 'good cause' is fatal to Petitioner's motion for a stay.") (citing *Rhines*, 544 U.S. at 277-78).

**III. The R&R**

When reviewing a magistrate judge's report and recommendation, a district court is required to "make a <u>de</u> <u>novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b),

and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]" *id.* Where no "specific written objection" is made to portions of the magistrate judge's report, the district court may adopt those portions, "as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp.2d 224, 226 (S.D.N.Y. 2008) (citing FED. R. CIV. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); other citation omitted). The district court is not required to review any portion of a magistrate judge's report that is not the subject of an objection. *Eisenberg*, 564 F. Supp.2d at 227 (citing *Thomas*, 474 U.S. at 149).

As noted above, no objections were made to any portion of the R&R. Cordero's assertion that he required a stay-and-abeyance in order to submit objections is meritless, as discussed above in the Court's ruling on the stay application.

The Court has reviewed Judge McCarthy's thorough and well-reasoned R&R and finds no error. The Court therefor accepts all of Judge McCarthy's findings and recommendations.

Accordingly, it is hereby

**ORDERED** that the Report and Recommendation (Docket No. 16) is **adopted in its entirety**; and it is further

**ORDERED** that the Petition (Docket No. 1) is **dismissed**; and it is further

**ORDERED** that no certificate of appealability shall issue; and it is further

**ORDERED** that Petitioner's Affidavit in Support of Stay and Abeyance and Motion to Appoint Counsel, Motion to Amend/Correct Petition for Writ of Habeas Corpus, Motion for Extension of Time to Complete Discovery/Expansion of the Record/Discovery (Docket No. 28) is **denied with prejudice**.

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 9, 2018
           Rochester, New York